All right, Mr. Weingrab, I'll be happy to hear from you, sir. Thank you, Your Honors, and may it please the Court. The opening round of briefs in this case focused on whether this Court's decision in Salazar could be reconciled with the Supreme Court's intervening decision in Simonelli, but the Supreme Court's more recent decision in Coussis rejected our reading of Simonelli, which means that Salazar remains the law of the circuit under which my client's conviction is a crime involving moral turpitude. So today I hope to instead address the issue raised in the supplemental briefs, which is whether a Class I misdemeanor in Virginia is a crime for which a sentence of one year or longer may be imposed. We contend it is not for two reasons. First, Congress intended this provision to apply only to crimes that are themselves punishable by one year or longer, or what Virginia and most states classify as felonies. And second, the maximum sentence for a Class I misdemeanor is 12 months, and the Court of Appeals of Virginia held in Belcher that a person convicted of such a crime cannot legally be sentenced to one year. Now on the first point, the government is wrong to contend that this Court already rejected the argument in Ortega-Cordova. The issue in this case was not briefed in Ortega-Cordova. I represented the petitioner in that case. Shortly before oral argument, I discovered the legislative history on which we rely in this case. So I alerted the panel to it in a 28-J letter and specifically asked it not to reach the issue so that it could be resolved in this case. If an issue hasn't been briefed before this Court, anything this Court might say about it is presumptively, if not necessarily, dicta, because it would not receive the Court's full and careful consideration, and it would not impair the analytical foundations of the holding. And as importantly, when this same scenario happened in Chavez, this Court did not deem Ortega-Cordova to have resolved the question. This Court instead declined to reach the issue because, again, it had not been briefed. So the point being that if the language in Ortega-Cordova was truly controlling, Chavez would not have declined to reach the issue. It would have said that the argument was foreclosed by Ortega-Cordova. So Chavez only confirms that the language in Ortega-Cordova was dicta. Now, on the merits, I recognize that courts typically do not begin their analysis with legislative history, but I would be remiss not to note that this is a case where the legislative history shows us precisely what Congress intended. Before voting on the language at issue, members of Congress were repeatedly told that it would only apply to noncitizens who had been convicted of a felony crime involving moral turpitude. The committee report accompanying the original bill twice referred to felony CIMTs. Members of both parties said on the floor of the House that it would apply to felony CIMTs. And after the bill was referred to the Senate, a summary in the congressional record also said that it would apply to felony CIMTs. So the point, Your Honors, is that while legislative history cannot trump the text of a statute that's only subject to one interpretation, the very existence of this legislative history demonstrates that the statute isn't subject to one interpretation. Because if the only way to read the statute was the government's way of reading it, this legislative history simply would not exist. So I think the true question for the court is whether it's possible to read the statute in a way that's consistent with the legislative history. And we believe that it is because from a grammatical standpoint, the statute can be read two possible ways. Well, it seems to me that one of the statutory points that doesn't help you out is that the statute is written in the injunctive. It says a sentence of one year or longer. In other words, if either one of those conditions is present, that's what suffices. And so this isn't longer than one year here, but you have a situation where the sentence is a maximum sentence of one year. And if either of those things is present, the statutory language would appear to control. And I think the Seventh Circuit agrees with that. And I think, you know, the overturning of precedent of the court, which you can try to explain it away and say it's dicta, but when you read or take a Cordova, it seems right on point, isn't it? Well, I think that's because Your Honor is assuming that the statute refers to the maximum possible sentence. And our entire argument is you don't have to read the statute that way. We read the statute as referring to a single set of crimes for which the sentencer has discretion to impose a sentence of either one year or longer than one year. So to see why our reading is grammatically possible, just consider the following question. Is Domino's a restaurant where customers can order pizza or sushi? Now, the answer to that question could be one of two things, because it depends on what information the speaker wants to elicit. The answer would be yes if the speaker wanted to learn whether Domino's sells either pizza or sushi, but not necessarily both. But the answer would be no if the speaker wanted to learn whether Domino's offers a choice between pizza and sushi. And here as well, Congress could have been referring to a crime for which a sentence of one year could be imposed, even if a longer sentence could not be imposed. That's what the government thinks. Or grammatically, Congress could have been referring to crimes for which either a sentence of one year or a longer sentence could be imposed. But what the statute is may be imposed. I mean, we're not talking about, you know, some mandatory minimum or something. We have a statute in which a sentence of one year is possible. And I don't know how you read the language for a crime one year may be imposed. It doesn't mean that the sentence of one year has to be imposed. It says simply that it may be imposed. We've never argued that that this that this language requires a mandatory minimum. Our argument is that this language refers to crimes for which a sentence of both one year and longer than one year fall within the statutory range. And I would add that from a textual standpoint, the very phrase a crime for which a sentence of one year or longer may be imposed is a phrase of art that any reader would associate with a felony. So, for example, imagine a job application. That's not the way it's written. It is a conviction of an offense. It doesn't say conviction of a felony offense. The word felony doesn't appear there. I mean, it seems to me I don't blame you for resorting to the legislative history, but I just wonder whether we can really call upon the legislative history to do the job for us when the statutory language is as clear as it is. And when it's written in terms when there's when there's both the disjunctive or in the statute, and it's written in terms of what may possibly be done, what may be imposed. And those those two things, among others, are make I think make it a bit of a hurdle for you. Your Honor, four circuits have described the statute as applying to felony CIMTs. Our argument has never been that the statute refers to a felony. And Congress had good reason not to use the term felony because some states themselves don't use the term felony. New Jersey and Maine just classify crimes by degree. So if you use the term felony, it would have been excluding serious crimes in certain states. But the point I was making is that this phrase is a phrase of art. If a job application asked prospective employees whether they had ever been convicted of a crime for which a sentence of one year or longer may be imposed. I think the vast majority of people would understand that question to refer to a felony. Now, again, we recognize that other provisions of federal law define a felony as a crime punishable by more than one year. But many states and legal that legal dictionaries define it as a crime punishable by one year or more. When the statute is enacted. Yes. Can I interrupt you? I mean, I see your point that you could look in isolation and think that might have been, you know, generally referring to felonies and folks might think of it that way. You know, the trouble is that Congress is kind of all over the place with this whole with this. Yeah. How they describe things. I mean, you know, we got, you know, 1182 A and 1227 A that are both dealing with this crime involving moral turpitude. And one one applies to sentences of a year or longer. And one says, you know, one says only if more than a year. So, you know, why is that the case? I mean, I'm not sure why. But it it kind of, you know, belies it seems to me the fact that, you know, we can just say, hey, they must have meant felonies. You know, we got felon in possession statutes that are clearly talking about more than one year. Yeah. And and we got the rule of evidence that talks about impeachment and crimes of more than one year. So Congress knows how to use those words when it wants to. Yeah, I'm kind of sympathetic. I can't make sense of how all those things are. But I really have a difficult time have understanding how we can go beyond what the words seem to me to pretty clearly say. Your Honor, our point is that when it comes to describing a felony, the phrases more than one year and one year or more are often used interchangeably. I was starting to say at the time the statute was enacted, Brian Garner's Dictionary of Modern Legal Usage defined felony as a crime punishable by imprisonment for a year or more. So did a number of states, including Georgia, Illinois, Kentucky, Tennessee, Wisconsin and New Mexico. And I think this actually matters because the member of Congress who proposed this bill, the original language, he was from New Mexico. His name was Stephen Schiff and he served as a prosecutor for two decades before being elected to Congress. So he was undoubtedly familiar with his own state's definition of felony, which again was for a year or more. And not only did Mr. Schiff initially propose the statute at issue in this case, but he was one of the managers in the conference committee that produced the final text of the Anti-Terrorism and Effective Death Penalty Act, which is the bill in which this language is ultimately enacted. So the member of Congress who drafted the language in question and likely had it inserted into the bill in which it was enacted, almost certainly understood the phrase one year or longer to be shorthand for a felony. But again, to be clear, we do not argue that the statute only reaches crimes that are classified as felonies under state law. Our argument is that the statute only reaches crimes for which a sentence longer than one year may be imposed, which are generally classified as felonies. And again, to your Honor's question, it is true that Congress has been more clear in other statutes in defining a felony. But our entire argument is that the only thing that is clear about the statute is that it could have been written more clearly. If Congress wanted to achieve the result that the government wants, it could have simply referred to a crime for which a sentence of one year may imposed. Or it could have referred to a crime for which the maximum sentence is one year or longer, similar to how it did in 1182 in the petty offense exception. So, again, our point is simply that the statute can be read two ways. And then when you look at the other things like legislative history and the structural anomaly that the government creates, that tips the scale in our favor. And if I could just address that structural anomaly. Let me just say one thing. I hear your point, but you just have two different hurdles to overcome. Number one, it's a hard, hard case to make that legislative history takes precedence over the plain meaning of statutory text. And it might if the statutory text was genuinely ambiguous. But, you know, frank to tell you, I don't see that the text itself is ambiguous. And as Judge Quattlebaum said, and it's hard to see if the text itself is apparently clear. As the Seventh Circuit has said, to have the legislative history override that is a big step for us to take. And that would be particularly in the case where we are asked to, I think, override the plain statutory text. But also to override one of our prior precedents in Ortega-Cordova, which seems to me directly on point. So we were asked to overturn one of our own precedents and we were asked to overturn clear statutory text. And that's a tall order, is it not? Well, as I already said, Ortega-Cordova, that language was dicta because this issue was not before the court in that case. So all the arguments that are in front of this panel were not in front of the panel that decided Ortega-Cordova. And as for whether this language is ostensibly plain, if it was so plain, I don't understand why four circuits would have described the statute as applying to felony CIMTs. And Judge Wilkinson, I would also note that your honor, in your concurring opinion in the Lockhart case in 2020, you also described felonies as applying to crimes punishable by one year or more, not simply more than one year. So, again, the point is that courts interchangeably use the phrases more than one year and one year or more when it comes to describing a felony. So when so I think that itself creates ambiguity. And also with the legislative history, again, this legislative history wouldn't exist if the statute was only subject to one interpretation. I think we should presume that members of Congress are able to read the statutes that they enact. And if multiple members of Congress said on the floor of the House that this statute referred applied to felony CIMTs, then clearly the statute is susceptible to that interpretation. And to the extent the court finds that there is ambiguity, we would ask the court to adopt our reading under the immigration rule of lenity, which remains in force now that Chevron has been overruled. Thank you very much. Do you also have some time for rebuttal? And if either of my fine colleagues has questions for you, Judge Gregory? No questions. Judge Qualbaugh? Thank you very much. As I mentioned, you've got some time for rebuttal. Mr. Ramnitz? Yes, that's correct. Okay. Let's hear your side of it, okay? May it please the Court, Your Honor. Sam Ramnitz on behalf of the United States Attorney General. My understanding is that Petitioner is waiving his arguments pertaining to the CIMT on his challenge to Salazar. So I'm not going to address those arguments. I'm just going to focus on what he says is his remaining argument that he's not waived, which is the one-year-or-more issue. And the government argues this is foreclosed by Ortega-Cordova. Now, Petitioner claims and says that the arguments he raises here were not presented to the panel in Ortega-Cordova, but that is incorrect. Once he raises arguments to the panel in Ortega-Cordova and filed a 28-J about it, the panel nonetheless went ahead and included that language in their opinion, saying that his argument flops the clear, unambiguous statutory language. After that, the opposing counsel here filed a motion to amend. And in that motion, he requested the court to excise that language from its opinion. And he presented all the same arguments that he presents here, because at that point he had briefed this case. And he even requested the court in Ortega-Cordova to wait for this panel in Perdomo to look at the issue. And the Ortega-Cordova panel declined to do that. It rejected that, and it rejected his motion to amend. So far from dicta, the panel in Ortega-Cordova made it very clear it wanted that language in the opinion. Otherwise, it would have granted his motion to amend if it was actually dicta. It was not dicta. It was purposely put in that opinion, and the court affirmed that by denying the opposing counsel's motion to amend. So we say the argument is directly foreclosed by Ortega-Cordova. What that leaves is his argument under Belcher. And Belcher, we think, is just an argument. It's just a case about legal repercussions and the differences between felonies and misdemeanors. It has nothing to do with the difference in calendar days between 365 days and one year. And that's underscored by the fact that some states, like California and Washington, for example, have made misdemeanors to be 364 days, not 365 days, just to get around this rule about CMTs. So we think he misreads Belcher and his argument about the one year or more is foreclosed. Unless the panel has any questions for the government. What about what Virginia says about it? The Belcher argument? Yeah. That's what I was explaining. I don't believe it actually means what Petitioner wants it to mean. What did the Supreme Court of Virginia mean when it said it? It was talking about different legal repercussions between a sentence of one year for a misdemeanor on one hand and one year for a felony on the other hand. Not there was some difference in the amount of time served in incarceration. So you have a 365-day sentence possible as a misdemeanor, and so you have a one-year sentence. What it said is that you could not sentence a person for a misdemeanor for a one-year sentence. To a one-year sentence. No, you could do that. It says that what happened was they remanded because the jury saw that one-year sentence as a felony sentence, not a misdemeanor sentence. And they said that in the court you saw, as the government explained, said this might be splitting hairs because there is no real difference between the time served that's sentenced, but there's a difference in the repercussions of that. If you describe it as a misdemeanor on one hand, you have quicker ability to build up time served to get early release. You also can serve that time in jail. But if you describe that one year as a felony, you lose those advantages. So there was no difference in the actual time imposed or time able to be imposed. It was just what legal consequences stemmed from how you described it as a felony or a misdemeanor. So a misdemeanor sentence can still be imposed for one year. But you must label it a misdemeanor. You cannot label it a felony. You label it. But what you're charged with was a misdemeanor with the maximum sentence, right? Twelve months. And you couldn't give a one-year sentence, right? You can. I don't believe that. The culture still says you can do that. That's why you see they cite the prosecutor's statement that while there's no colloquial difference in the amount of time served, there's a difference in how it's served and legal repercussions. How it's served versus jail versus prison, legal repercussions versus how quickly you can accrue early release. But you can certainly still be sentenced for one year in incarceration for a misdemeanor. And if it was different than that, you would see language like you see in other statutes, in other cases, like in California, where it says the maximum punishment or maximum sentence imposed is 364 days. Those states make it very clear that there is a sentence of less than one year, less than 365 days. You don't have that language in Belcher. You don't have that language in any Virginia statute. We have as Belcher just simply looking at the different legal repercussions of describing it as a one-year misdemeanor or a one-year felony. Mr. Gregory, do you have any further? No. There's quite a lot. Thank you very much, counsel. We appreciate it. Thank you. Mr. Weinberg, do you have some time for rebuttal, sir? Thank you, Your Honor. With respect to Ortega-Cordova, we know the language in that decision was dicta because this court's more recent decision in Chavez did not treat that language as binding. It declined to reach the issue altogether. This court does not customarily decline to reach issues that are already foreclosed by precedent. It says that they're foreclosed by precedent. So I think Chavez itself, which is the more recent decision, and I want to also note Chavez was written by Chief Justice. Counsel, I mean, given that, yeah, Matt, there's been a good debate about whether we're foreclosed by that. I think there's certainly a strong case that we are. But even if we aren't, we have a panel of ours that plainly considered this issue and wrote about it. And, you know, as your colleague points out, you wanted them to consider it. You asked them to consider it. And, you know, and they did. And, you know, maybe it's foreclosed. But even if it's not, you know, we have a panel talking very clearly about this. And I mean, you know, we would even if somehow we're not absolutely bound. I mean, we would respect, you know, our prior panel who's considered this issue and says the argument you're making is contrary to the plain language of the statute. So, you know, I think there's two points. There's one, is it foreclosed? And even if somehow you get past that, we still have a panel dealing with this same issue. Well, yes, Your Honor, to correct the record, I did not ask the panel in Ortega-Cordova to reach the issue. On the contrary, I only notified the panel of the issue precisely so that it would not reach the issue and would allow the panel that decides this case to reach the issue. I mean, I'm not sure that helps you in terms of how important it was to the panel. I mean, maybe that helps you a little bit in arguing we're not foreclosed. But in the issue about whether we should consider it, I mean, you know, again, there's cases where maybe we don't have to follow a prior panel. But, you know, we respect our colleagues. And when they talk about something, give it thoughtful consideration, you know, I mean, to me, that is something we should give strong consideration to. Sure, Your Honor. If the full panoply of arguments that were before this panel were in front of the panel that decided Ortega-Cordova, then sure, I would agree. But the panel in Ortega-Cordova didn't have these arguments. All they had were a series of dueling 28-J letters, you know, limited to 350 words, explaining the very outlines of the argument and specifically asking them not to reach the issue. And I think it would set a terrible precedent if this court were to regard as precedent language in an opinion on an issue that was not briefed and which neither party asked the court to consider. We can't go into a prior panel opinion, which very clearly stakes out a result and which very, very clearly sets forth its reasoning and addresses the result. And we can't go behind that and say, well, we think that the panel did not have sufficient information before it, whatever. And for us to be reviewing the adequacy of consideration, the point is, it's not the basis that the panel had before it. It's the actual decision that the panel decided to make. Sometimes panels want a great deal of information before ruling, but other times panels think an issue is very clear on the basis of what they have. But the point is, what in the final analysis did the panel decide to do? And it's pretty clearly on point, what they decided. And in the 28J letter, it put the issue before us. I don't think I was in the panel, but I may have been. I don't know. But at any rate, the whole system depends upon one panel respecting the views of another panel and a prior panel. And there are times when precedent is convenient and there are times when precedent is inconvenient, but it doesn't matter. It's still a precedent of this court. And so I think institutionally, that's what's at issue is our mutual respect for one another, even where we didn't serve on the prior panel. That's all I'm saying. Thank you, Your Honors. We thank you. I have a question. Sure. Counsel, do you agree with counsel in saying that Belcher has no consequence to your argument with how Virginia deals with 12-month sentences versus one-year sentences? No, not at all, Your Honor. We certainly disagree with their characterization of Belcher. Belcher holds that a sentence of one year in Virginia cannot be imposed for a Class I misdemeanor because by statute is subject to a maximum penalty of 12 months. And the court explained that the Assembly intended 12 months and one year to mean different things, that a sentence of one year falls outside the permissible statutory range for a misdemeanor. And again, Belcher did not solely rely on how these sentences are carried out. Belcher said that a sentence of one year is, quote, beyond or outside the statutorily permitted range, and the trial judge should not have reduced the one-year sentence to 12 months. Right. That's exactly what I thought it was, too. It's not about how you serve and those kind of things. Go ahead. That's all I have. Thank you. Thank you, Your Honor. All right. We thank you, and we appreciate very much your argument. I'm sorry we can't shake your hands and tell you so. We appreciate you being here, and now we will move directly into our third case.
judges: J. Harvie Wilkinson III, Roger L. Gregory, A. Marvin Quattlebaum Jr.